IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE PALMER,<br><br>    Plaintiff,<br><br>vs.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>    Defendant. | Case No. 1:22-CV-05036<br><br>The Honorable Jorge L. Alonso |

**DEFENDANT THE PROCTER & GAMBLE COMPANY'S
MOTION TO DISMISS & MEMORANDUM OF LAW**

Plaintiff Stephanie Palmer alleges that she purchased Tampax tampons (the "<u>Product</u>" or the "<u>Tampons</u>") manufactured and distributed by Defendant The Procter & Gamble Company ("<u>P&G</u>") from a Dollar General in Illinois. Compl. ¶ 55. Specifically, Plaintiff purchased "Tampax pure cotton*", the front label of which includes a large font, bolded description explaining that the Product "*contains **100% ORGANIC** COTTON CORE." Compl. ¶ 1 (emphasis in original). The packaging also explains that the Tampons are "free of dyes, fragrances, and chlorine bleaching" and use a "90% plant based applicator." *Id*.

Plaintiff does not dispute the accuracy of these statements. She nevertheless claims that she understood the name and label of the Tampons to mean that (1) the Tampons are made entirely of cotton or otherwise "unaltered" ingredients; (2) no component of the Tampons is colored in any manner; and (3) the Tampons are "better for the environment than alternatives." Compl. ¶¶ 8–9, 22, 54. The unambiguous label of the Tampons does not say any of these things—and both the plain language and full context of the label plainly dispels such unsupported and fanciful interpretations. Moreover, Plaintiff provides only conclusory, unsubstantiated allegations that consumers agree with Plaintiff's subjective interpretations contrary to the actual label. Courts have rejected this kind of deficient and conclusory attempt to invent a claim many times already[1] and the same result should obtain here. For these reasons and the others detailed below, the Court should dismiss Plaintiff's Complaint, which is defective as a matter of law.

## I. <u>PLAINTIFF'S ALLEGATIONS</u>

Plaintiff asserts a putative class action, generally alleging that the Tampon package claims

---

[1] Indeed, "[t]his lawsuit is one of hundreds of lawsuits filed by [Plaintiff's] counsel alleging misleading [product] packaging[,]"many of which have been dismissed because the alleged deception is contrary to the actual advertising statements on the product. *Burns v. Gen. Mills Sales, Inc.*, No. 3:21-CV-1099-DWD, 2022 WL 3908783, at *4 n.6 (S.D. Ill. Aug. 30, 2022).

1

are deceptive, false, and misleading under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1–12, and similar state consumer fraud statutes. Compl. ¶¶ 41–42, 70–74. Plaintiff takes issue with three statements on the front of the Product packaging: (1) "pure cotton" in the name, (2) "Free of Dyes . . . & Chlorine Bleaching," and (3) "90% Plant Based Applicators." *Id.* ¶ 2.

*Pure Cotton.* Plaintiff alleges that the "pure cotton*" language in the product name communicates that the Tampons are made only from cotton components, or other "pure" ingredients that are "not significantly altered from their original state." Compl. ¶¶ 7–8. Plaintiff alleges that this statement is false or misleading because the Tampons contain some non-cotton and allegedly synthetic ingredients, including polypropylene, polyester, glycerin, paraffin, and titanium dioxide ("TiO2"), each of which Plaintiff admits the packaging discloses and none of which is described as "pure." *E.g., id.* ¶¶ 8–21, 54. Plaintiff concedes that the label of the Tampons clearly states, immediately below the name, that the Product "*contains [a] **100% ORGANIC COTTON CORE**." *Id.* ¶ 21.

*Free of Dyes & Chlorine Bleaching.* Plaintiff asserts that "Free of Dyes [] & Chlorine Bleaching" suggests that no component of the Tampons is colored in any fashion. *Id*. at ¶¶ 23–24. Although Plaintiff concedes that this statement is "literally true[,]" she asserts that it is deceptive because TiO2, a white pigment, is used in the string of the Tampons. *Id.* ¶¶ 22–24.

*90% Plant Based Applicator.* Plaintiff contends that "90% Plant Based Applicators" means that the Tampon applicator is made of biodegradable and compostable plastic, although the packaging makes no such statement. *Id.* ¶¶ 25–38, 54. Even the so-called "consumer survey" that allegedly supports this fanciful interpretation admits that "'plant-based' refers to the source of the material itself, not how the resulting plastic will behave after it's been thrown away." *Id.* ¶ 31.

Despite P&G's clear, descriptive, and truthful statements on the front label, Plaintiff brings ICFA and other state consumer protection act claims, as well as claims for breach of warranty, negligent misrepresentation, fraud, and unjust enrichment. Ample precedent in this jurisdiction and others demonstrates that complaints such as this one, which seek to advance theories of alleged deception contrary to unambiguous label language, are deficient as a matter of law. The Court should reach the same conclusion in this case and dismiss Plaintiff's complaint with prejudice.

## II. LAW AND ARGUMENT

The Complaint fails plausibly to allege that a reasonable consumer would ignore the true and unambiguous language on the front label of the Tampons and instead interpret the label statements in the unreasonable and contrary manner that Plaintiff has invented. Even assuming the truth of Plaintiff's allegations concerning her subjective belief about the Tampons, that does not give rise to a cognizable claim where, as here, that subjective belief departs from that of a reasonable consumer presented with the clear statements contained on the label. This flaw alone dooms all of Plaintiff's claims, which depend on the existence of a false or misleading package statement. Plaintiff's warranty, negligent misrepresentation, and fraud claims, as well as her request for injunctive relief, fail as a matter of law for additional reasons, including Plaintiff's lack of standing to seek injunctive relief.

### A. Legal Standards.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court must accept as true well-pleaded factual allegations, this rule is "inapplicable to legal conclusions." *Id*. A plaintiff cannot "unlock the doors of discovery" if "armed with nothing more than conclusions." *Id.* at 678–79.

Even if a theory appears cognizable and the factual allegations are detailed, the court must be able to "infer more than the mere possibility of misconduct." *Id.* at 679. Importantly, a plaintiff may "plead[] h[er]self out of court" by making allegations that contradict documents cited in a complaint. *Karling v. Samsara Inc.*, --- F. Supp. 3d ----, 2022 WL 2663513, at *5 (N.D. Ill. 2022).

A party "must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). This "ensures that plaintiffs do their homework before filing suit and protects defendants from baseless suits that tarnish reputations." *Pirelli Armstrong Tire Corp. Retiree Med. Ben. Trust v. Walgreen Co.*, 631 F.3d 436, 439 (7th Cir. 2011). This heightened pleading standard applies to all claims based on "allegations of fraud," *id.* at 447, including for deceptive conduct under the ICFA. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019).[2]

### B. Plaintiff cannot plausibly allege deceptive, false, or misleading statements sufficient to support any of her claims.

Under the ICFA, a practice is deceptive only if it is "likely to mislead a reasonable consumer," which "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 972–73, 976 (7th Cir. 2020) (citation omitted). The standard "requires more than a mere possibility that [a] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Chiappetta v. Kellogg Sales Co.*, No. 21-CV-3545, 2022 WL 602505, at *3 (N.D. Ill. 2022). The "standard requires a showing of probable, not possible, deception." *Troutt v. Mondelez Global LLC*, No. 21-cv-01279-SPM, 2022 WL

---

[2] Plaintiff also states that P&G's conduct was "unfair" (Compl. ¶¶ 64, 72), but alleges no claim on that ground. If she purports to rely on unfair conduct under the ICFA, her complaint is insufficient as she does not allege that any practice (1) "offends public policy," (2) "is immoral, unethical, oppressive, or unscrupulous," or (3) "causes substantial injury to consumers." *EBCF Enters., Inc. v. Erie Ins. Exch.*, 572 F. Supp. 3d 489, 496 (N.D. Ill. 2021) (Alonso, J.) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (2002)).

4

16552956, at *3 (S.D. Ill. Oct. 31, 2022) (citations omitted). "Relevant circumstances include all of the information available to consumers and the context in which that information is provided and used." *Cristia v. Trader Joe's Company*, No. 22-CV-1788, 2022 WL 17551552, at *3 (N.D. Ill. Dec. 9, 2022) (citations omitted). "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Chiappetta*, 2022 WL 602505 at *4. "It is therefore well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Brodsky v. Aldi Inc.*, 2021 WL 4439304, at *4 (N.D. Ill. 2021) (quotations omitted). When a plaintiff's out-of-state consumer fraud, warranty, misrepresentation, fraud, and unjust enrichment claims depend on the defendant's allegedly deceptive conduct, these claims rise and fall with the plaintiff's ICFA claims. *E.g.*, *Jackson v. Kraft Heinz Foods Co.*, No. 1:21-cv-05219, 2022 WL 4591749, at *4 (N.D. Ill. Aug. 23, 2022).

### 1. Reasonable consumers would not be deceived by the "pure cotton*" label.

Plaintiff fails plausibly to plead that reasonable consumers would believe that the entire Tampon is made of cotton, or would lack components that "have not [been] significantly altered from their original state[,]" Compl. ¶ 54, based on the Product's truthful labeling. Examining the "pure cotton*" statement in its full context, Plaintiff does not and cannot identify any ambiguous statement that could plausibly mislead a reasonable consumer. *Rice v. Dreyer's Grand Ice Cream, Inc.*, No. 21-c-3814, 2022 WL 3908665, at *4 (N.D. Ill. Aug. 30, 2022) (holding that plaintiff's "ICFA claim fails as a matter of law because he does not identify any ambiguous statement on the product's front label" that, although literally true, could mislead a reasonable consumer).

On the front label, the name of the Product, "Tampax pure cotton*" appears in the middle of the box. Compl. ¶ 1. Immediately beneath the Product name in bold, capitalized font, there

appears the following: "*contains **100% ORGANIC** COTTON CORE." *Id.* In addition to proximity, two asterisks connect the prominent statements, unambiguously indicating that "pure cotton* means that the Tampon "*contains [a] **100% ORGANIC** COTTON CORE." Plaintiff admits that this is a true statement but seeks to disregard it in favor of a distorted interpretation. *Id.* ¶ 21. This is not a case of "fine print" otherwise clarifying a potentially misleading statement. *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 476 (7th Cir. 2020). The "COTTON CORE" language is clear, unambiguous and even appears in large, prominent text on the front of the label immediately adjacent to the language that Plaintiff seeks to distort. Plaintiff does not and cannot plausibly allege that any reasonable consumer is likely to be deceived in light of this conspicuous and accurate description of the Tampons. *See Cristia*, 2022 WL 17551552 at * 4 (holding that it was unreasonable to interpret "cold pressed juice" as suggesting the juice is not further processed in light of additional label disclosure).

Courts routinely reject claims that require the broad application of language on a label that instead clearly applies to only one ingredient or component of a product. *See, e.g.*, *Rice*, 2022 WL 3908665, at *4 (holding that a chocolate and almond label did not mean the chocolate coating was made of only chocolate and almonds) (collecting cases); *Song v. Champion Petfoods USA, Inc.*, 27 F.4th 1339, 1345 (8th Cir. 2022) ("No reasonable consumer could believe that the 'fresh regional ingredients' statements on . . . packaging meant that all of the dog-food ingredients were fresh and regional[.]"); *Lisowski v. Henry Thayer Co.*, 501 F. Supp. 3d 316, 335 (W.D. Pa. 2020) ("No reasonable consumer reading the phrases in context, which are plainly limited to one ingredient, would be misled into believing that all of the product's ingredients are natural."); *Kennedy v. Mondelez Glob. LLC*, No. 19-CV-302-ENV-SJB, 2020 WL 4006197, at *12 (E.D.N.Y. July 10, 2020) (dismissing challenge to "made with real honey" label because the "products do not

6

state anywhere that honey is the only ingredient" used to sweeten them).

There is no untrue or misleading statement on the Tampon packaging and the front label accurately and prominently describes the Product. Plaintiff's claims resting on the "pure cotton" theory should therefore be dismissed as a matter of law.

### 2. The dye-free and bleach-free statements are true and not plausibly alleged to be false or misleading.

Plaintiff also fails to allege any false or misleading representation as to the presence of TiO2 in the string of the Tampons. Plaintiff claims that Defendant made false or misleading claims through the Product's use of the statement "Tampons Free of Dyes [] & Chlorine Bleaching." *See* Compl. ¶ 23. Specifically, Plaintiff alleges that the statement "Free of Dyes [] & Chlorine Bleaching" is misleading because the Product "contains [TiO2], a synthetically prepared powder used as a white pigment" in the Tampon string. *Id*. ¶¶ 23–24.

Plaintiff admits that the package statements are "literally true" because titanium dioxide is neither a dye nor chlorine. *Id*. ¶ 16. Instead, Plaintiff construes the package statement to mean that no component of the Tampons was colored in any manner, which is an unreasonable interpretation of the actual language on the label. Courts regularly dismiss similar claims attempting to construe accurate statements on a product's label as misleading, because "a statement or label cannot mislead unless it actually conveys untrue information about a product." *Floyd v. Pepperidge Farm, Inc.*, 581 F. Supp. 3d 1101, 1109 (S.D. Ill. 2022) ("golden butter" cracker label not misleading as to presence of vegetable oils, because crackers were golden and contained butter). In *Cristia v. Trader Joe's Co.*, 2022 WL 17551552, at *3, for instance, the court rejected an argument that a "cold pressed juice" label was misleading because the plaintiff construed it to mean that the juice was not processed in any manner. The court dismissed the claim because the plaintiff's interpretation was unreasonable and "plaintiff acknowledges in her complaint that the juice

7

product is in fact cold pressed, meaning that she is challenging a factually accurate statement." *Id*. at *5. Likewise, in *Gouwens v. Target Corp.*, No. 3:22-CV-50016, 2022 WL 18027524 (N.D. Ill. Dec. 30, 2022), the court found that a representation regarding "natural flavor" did "not amount to an affirmative representation that the Product is free from artificial flavors." *Id*. at *3.

Relatedly, courts find that the presence of a purported "negative" substance does not preclude a manufacturer from advertising other, positive attributes in the same product. *See, e.g.*, *Stuve v. The Kraft Heinz Co.*, No. 21-CV-1845, 2023 WL 184235, at *10 (N.D. Ill. Jan. 12, 2023) ("The alleged presence of a negative substance does not prohibit a manufacturer from advertising a product's positive qualities."). Even if the Court were to accept Plaintiff's unsupported conclusion that TiO2 is problematic (and there is no basis to do so),[3] that does not preclude Defendant from highlighting the positive attributes of the Tampons, including that they contain no dyes or chlorine bleach. In *Stuve*, for instance, the court rejected the plaintiff's claim that a "no artificial preservatives, flavors, or dyes" statement on a Kraft macaroni and cheese box was misleading where the product allegedly contained phthalates (a type of plastic), reasoning:

> Plaintiffs do not allege that Kraft Mac & Cheese does contain artificial preservatives, flavors, or dyes—just that the statements "lead reasonable consumers to believe that the Products are wholesome, safe, and healthy, and do not contain dangerous chemicals or artificial substances, like phthalates." Plaintiffs have not stated a plausible claim in this regard. The alleged presence of a negative substance does not prohibit a manufacturer from advertising a product's positive qualities.

---

[3] Plaintiff vaguely suggests that titanium dioxide is considered potentially harmful by the European Union. Compl. ¶ 20. That suggestion is both misleading and incomplete. On January 14, 2022, the European Commission issued Commission Regulation (EU) 2022/63, which removed TiO2 only from the list of ***food additives*** approved for use in the EU. *See* Commission Regulation (EU) 2022/63. That action was not based on any finding of harm but rather a desire for further study. TiO2 remains approved for use in other consumer products in Europe, including for dermatological use at concentrations of up to 25%. In the U.S., the FDA continues expressly to permit TiO2 as a color additive in food, as well as in a variety of cosmetics, drugs, and medical devices. 21 C.F.R. § 73.575(c)(1); *id.* § 73.2575(b); *id.* § 73.1575; *id.* § 73.3126.

8

*Id.*; *see also George v. Starbucks Corp.*, No. 19-cv-6185 (AJN), 2020 WL 6802955, at *1-2 (S.D.N.Y. Nov. 19, 2020), *aff'd* 857 F. App'x 705 (2d Cir. 2021) (dismissing claim that "no artificial dyes or flavors" was misleading where plaintiff alleged the potential presence of a pesticide). Here, Plaintiff admits that the Tampons contain no chlorine bleach or dyes and she thus challenges only a factually accurate statement that would not mislead any reasonable consumer. The presence of the pigment TiO2 in the Tampon string does not preclude Defendant from truthfully advertising that the Tampons are free of dye and chlorine bleaches.

These truthful statements on the front label are bolstered by the disclosure on the back of the Tampon box that the product contains TiO2. Compl. ¶ 9. Though contradictory back-label disclosures cannot cure an otherwise misleading front-label representation, back-label disclosures may nonetheless clarify a reasonable consumer's understanding of a product's accurate front label. *See Bell*, 982 F.3d at 476–77 (confirming principle "that deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used") (citation omitted).

In *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 758 (N.D. Ill. 2015), for instance, the court recognized that "to arrive at a reasonable understanding of the claim 'no refined sugars,' Ibarrola should have considered the other information she encountered on the product's packaging," including express disclosure of molasses and evaporated cane juice. *Id.* at 759 ("Ibarrola also fails to plausibly allege how her understanding of the term 'no refined sugars' corresponds with the contrary information in the ingredient list."); *Floyd*, 581 F. Supp. 3d at 1109 (no deception from "Golden Butter" name where "[t]he name and the ingredient list coalesced"). Here, too, any fanciful interpretation of the "No [] Chlorine Bleaching [or] Dyes" statement would readily be dispelled by a cursory review of the back label.

9

Finally, Plaintiff raises only conclusory allegations that the statements would mislead consumers. Plaintiff alleges without support that the packaging "appeal[s] to consumers who seek products without added coloring." But these "allegations about consumer expectations . . . are conclusory statements that [the court] need not accept." *Wach v. Prairie Farms Dairy, Inc.*, No. 21 C 2191, 2022 WL 1591715, at *3 (N.D. Ill. May 19, 2022); *Cristia*, 2022 WL 17551552, at *5 (dismissing claim where "plaintiff provides only conclusory factual allegations to suggest that unspecified 'consumers' agree with her subjective interpretation of the label"). Without any plausible allegations of consumer confusion, Plaintiff fails to demonstrate that P&G's truthful statements that the Tampons do not use dyes or chlorine bleach are false or misleading.

### 3. The plant-based plastic statements are not deceptive as a matter of law.

The Complaint does not plausibly allege that the "90% Plant Based Applicator" statement is likely to mislead a significant portion of reasonable consumers into believing that the plastic applicator is biodegradable or compostable. This statement is an accurate, descriptive explanation of the material used in the plastic applicator, *i.e.*, that the source of 90% of the material is plants. Plaintiff does not dispute this. Compl. ¶¶ 31, 33. As Plaintiff herself alleges, consumers often understand words "consistent with dictionary definitions." *Id.* ¶ 3. The dictionary definition of "plant-based" is "made or derived from plants."[4] The Tampons make no statement or claim about being biodegradable or compostable and no comparison to alternative products. No reasonable consumer would infer such additional claims that are not present on the label.

Scant allegations about consumer surveys do not "nudge[ ] [these] claims across the line

---

[4] "Plant-based," Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/plant-based (last visited January 31, 2023).

from conceivable to plausible." *Bell*, 982 F.3d at 476. The Complaint alleges that a "British organization[,] Natracare," a commercial competitor of Defendant,[5] says and a consumer survey demonstrates that consumers think "plant-based" means compostable and biodegradable. Compl. ¶¶ 28–31. The subjective nature of this purported survey renders Plaintiff's allegations implausible because "the value of a survey is only as good as the objectivity of the survey," and this survey lacks objectivity. *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharms. Co., Inc.*, 906 F. Supp. 178, 181 (S.D.N.Y. 1995).

Also missing are other critical allegations necessary to make Plaintiff's claims about the survey results plausible. The Complaint does not allege what consumers were surveyed, the methodology of the survey, whether "plant-based" was defined, or the possible answers. Such "barebones allegations [that] do not include important details such as exactly what questions the survey asked or what its methodology entailed" "are not enough to nudge [a plaintiff's] claims of consumer deception from possible to plausible." *Puri v. Costco Wholesale Corp.*, No. 5:21-cv-01202-EJD, 2021 WL 6000078, at *7 (N.D. Cal. Dec. 20, 2021) (stating that "otherwise facially implausible consumer deception claims cannot be redeemed by survey allegations alone," "[e]ven if [the plaintiff] had provided sufficient factual detail concerning the survey"); *Karlinski v. Costco Wholesale Corp.*, No. 1:21-CV-03813, 2022 WL 2867383, at *5 (N.D. Ill. July 21, 2022) (collecting cases rejecting similar surveys from Plaintiff's counsel in this case); *Cerretti v. Whole Foods Mkt. Grp.*, Inc., No. 21 CV 5516, 2022 WL 1062793, at *4 (N.D. Ill. Apr. 8, 2022); *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, 2020 WL 5910071, at *6 (N.D. Cal. Oct. 6, 2020) (considering the weakness of a survey at the motion to dismiss stage).

---

[5] Natracare, "Applicators Unwrapped – the Problem with Plant-Based Plastic Applicators," 13, https://drive.google.com/file/d/1V5lruMQqyPXQt5rQQkSUJfpVYa8I2gbv/view?usp=sharing (last visited January 31, 2023) (cited in Compl. ¶ 28 n.1).

11

The survey document, which is incorporated by reference through the allegations of the Complaint, does not support Plaintiff's attempted conclusions. The title of the relevant portion of the survey is "what menstruators think," and the survey question was, "What do you think when you read the words plant-based plastic?"[6] The survey provided only three possible answers, the first answer being the one Natracare desires—"[a] compostable and biodegradable alternative to plastic."[7] Natracare did not define "biodegradable," "compostable," or other terms used in the limited survey choices. *Id.* Allegations about a leading survey from a competitor does not give a plaintiff "a carte blanche to take illogical leaps and bounds" to infer claims not made on the product label. *Hawyuan Yu*, 2020 WL 5910071, at *6.

In similar cases, courts have not allowed allegations of weak, subjective consumer surveys to hijack the reasonable consumer standard. In *Hawyuan Yu*, for example, the court dismissed claims that a "natural" product label was deceptive because "reasonable consumers interpret the word natural to mean a food product that is completely free of any trace pesticides." 2020 WL 5910071, at *4. The court concluded that skeletal allegations about a survey concluding consumers interpret natural to mean "no toxic pesticides . . . were used" were insufficient to overcome the court's determination that no reasonable consumer would have interpreted the label in such a manner. *Id.* at *6; *see also Puri*, 2021 WL 6000078, at *7; *Kennard v. Kellogg Sales Co.*, No. 21-cv-07211-WHO, 2022 WL 4241659, at *4–5 (N.D. Cal. Sept. 14, 2022) ("I agree that the survey cannot save plaintiff's claim given the facial deficiencies, as well as the lack of any support for plaintiff's preferred definition of VEGGIE on the Products' packaging."). In short, the fact that a plaintiff includes allegations about a "survey does not shift the prevailing reasonable

---

[6] Natracare, "Applicators Unwrapped – the Problem with Plant-Based Plastic Applicators," 9.
[7] *Id*.

understanding of what reasonable consumers understand." *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019). Plaintiff's claims based on the "plant-based" plastic theory fail as a matter of law.[8]

## C. The Complaint fails to state actionable warranty claims.

Plaintiff's warranty and Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq*. claims fail as a matter of law. First, Plaintiff does not allege that she gave P&G required pre-suit notice. *See* 810 ILCS 5/2-607(3)(a); *Cristia*, 2022 WL 17551552 at *6. Plaintiff pleads only that her complaint is notice or she will provide future notice (Compl. ¶ 84), but courts have consistently rejected these arguments. *See Cristia*, 2022 WL 17551552, at *6 (such allegations are "not specific enough to meet her pleading burden."); *Wienhoff v. Conagra Brands, Inc.*, No. 21-CV-00501-NJR, 2022 WL 4103974, at *7 (S.D. Ill. Sept. 8, 2022) (rejecting argument "that the filing of the complaint satisfies the notice requirement"). Likewise, Plaintiff's vague and unidentified references to third parties are insufficient to plead proper pre-suit notice. *See*, e.g., *Cristia*, 2022 WL 17551552, at *6; *Cerretti*, 2022 WL 1062793, at *5–6 ("[C]omplaints (made by people other than Cerretti) at best put Whole Foods on notice of problems with the product line, and didn't alert the company to plaintiff's claim. That's not the kind of knowledge that can excuse pre-suit notice under Illinois law.").

Second, Plaintiff does not plausibly plead that she was in privity of contract with P&G, as is required for all warranty claims. *See Wienhoff,* 2022 WL 4103974, at *6. As many courts in this district have recognized, consumers who purchase products at retail stores—such as Plaintiff

---

[8] The Complaint includes vague allegations about unidentified "other representations and omissions" and that Plaintiff relied on other statements in online, audio, and print advertisements. Compl. ¶¶ 39, 56. Such allegations come nowhere near Plaintiff's heightened pleading burden under Rule 9(b). *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 905 (N.D. Ill. 2013).

13

(Compl. ¶ 55)—are not in privity with product manufacturers, and allegations about marketing campaigns do not establish that the consumer had direct dealings with manufacturers sufficient to establish privity. *E.g.*, *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1123 (N.D. Ill. 2019) (explaining that the direct-dealing exception addresses when a consumer deals directly with the manufacturer "as to the design of the product").

Third, Plaintiff's express warranty claims fail because the three labels identified by her do not make the promises that she claims. An express warranty requires an "affirmation of fact or promise." 810 ILCS 5/2-313. Plaintiff asserts that P&G warranted that the Product was wholly pure, "without added coloring, and was better for the environment." Compl. ¶ 75. As demonstrated above, P&G made no such affirmations, express or implied.

Finally, the Complaint fails to state an implied warranty claim. To be merchantable, goods "must be . . . fit for the ordinary purposes for which such goods are used" and "conform to the promises or affirmation of fact made on the container or label." 810 ILCS 5/2-314(2)(c), (f). There are no allegations that the Product was not fit for its ordinary purpose, serving as a menstruation hygiene product, and courts have resisted efforts to convert the ordinary-purpose inquiry into a hyper-specific one turning on each plaintiff's idiosyncratic theory of the case. *See, e.g.*, *Bartosiake v. Bimbo Bakeries USA, Inc.*, --- F. Supp. 3d. ---, 2022 WL 4552025, at *4 (N.D. Ill. 2022) (holding a cake's ordinary purpose was consumption, not whether the cake contained a "non-*de minimis* amount of milk fat ingredients" as the plaintiff alleged).

Plaintiff likewise fails to state a viable MMWA claim, because "the ability to sustain a cause of action under the [MMWA] is dependent on the existence of an underlying viable state-law warranty claim." *Weinhoff*, 2022 WL 4103974, at * 7 (citations omitted). Her MMWA class claim also fails for the independent reason that she fails to meet the one-hundred named plaintiffs

requirement for MMWA jurisdiction. *See id.* at *7; *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034 (9th Cir. 2020) ("[A] requirement for an MMWA class action in federal court is at least one hundred named plaintiffs.").

### D. The negligent misrepresentation and unjust enrichment claims are deficient.

Because Plaintiff pleads no actionable misrepresentation, her negligent misrepresentation and unjust enrichment claims fail as well. *See, e.g.*, *Wach*, 2022 WL 1591715, at *6. Plaintiff's negligent misrepresentation claim also fails under the *Moorman* doctrine, which bars negligence actions "for the recovery of economic loss alone." *E.g.*, *Jacobs v. Whole Foods Mkt. Grp., Inc.*, --- F. Supp. 3d ---, 2022 WL 3369273, at *4 (N.D. Ill. 2022) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (1982)). The exception for "one who is in the business of supplying information for the guidance of others in their business transactions" does not apply because, at best, Plaintiff alleges that P&G provides "information ancillary to the sale of a product." *Manley*, 417 F. Supp. 3d at 1120.

### E. Plaintiff lacks standing to seek injunctive relief.

Regardless of Plaintiff's allegations to the contrary, it is well-established in the Seventh Circuit that where a plaintiff is now aware of the facts she claims that P&G concealed, "[s]he faces no risk of future harm from being deceived . . . and [s]he therefore lacks standing to seek prospective injunctive relief." *Rice*, 2022 WL 3908665, at *2; *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014).

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

15

Respectfully submitted,

/s/ Scott A. Kane
Scott A. Kane
**SQUIRE PATTON BOGGS (US) LLP**
201 E. Fourth St., Suite 1900
Cincinnati, OH 45202
Telephone: (513) 361-1200
scott.kane@squirepb.com

Adam R. Fox
**SQUIRE PATTON BOGGS (US) LLP**
555 South Flower Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 624-2500
adam.fox@squirepb.com

P. Russell Perdew
**LOCKE LORD LLP**
111 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 443-1712
rperdew@lockelord.com

*Attorneys for Defendant The Procter & Gamble Company*