IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE PALMER, individually and on behalf of all others similarly situated | )<br>)<br>) |
| Plaintiff, | ) No. 22-cv-5036<br>)<br>) Judge Jorge L. Alonso |
| v. | )<br>) |
| PROCTER & GAMBLE COMPANY, | )<br>) |
| Defendants. | ) |

## Memorandum Opinion and Order

Plaintiff Stephanie Palmer filed this lawsuit alleging that Defendant Procter & Gamble Company's Tampax "pure cotton*" product misleads consumers into believing that all of its components are made from cotton, lack added coloring, and that its plant-based applicators are an ecological alternative to oil-based plastic applicators. Defendant moves to dismiss Palmer's claims for failure to state a claim and because Palmer lacks standing to seek injunctive relief. For the reasons that follow, the Court grants in part and denies in part Defendant's motion [13].

## Background

The Court takes the following facts from the complaint, which are accepted as true for motion to dismiss purposes. *See Lax v. Mayorkas*, 20 F. 4th 1178, 1181 (7th Cir. 2021). Defendant is an Ohio corporation that manufactures, markets, and sells women's hygiene products. One such product is Tampax "pure cotton*" tampons (the "Product"). The front of this Product's packaging features the statements "pure cotton*," "TAMPONS FREE OF DYES, FRAGRANCES & CHLORINE BLEACHING," "*CONTAINS **100% ORGANIC** COTTON CORE," a picture of cotton, and "90% PLANT BASED APPLICATOR," among other words. A copy of the packaging (as it appears in the complaint) is reproduced below:



(Compl. ¶ 1, ECF No. 1.)

Palmer alleges that she bought this Product on one or more occasions between 2020 and 2022, and/or other times, at stores including Dollar General, 221 W. Roosevelt Rd., Lombard, Illinois, 60148. She contends that, despite being labeled "pure cotton*", the non-core ingredients include polypropylene, polyester, glycerin, paraffin, and titanium dioxide. She contends that these ingredients are not "pure" because they are significantly altered from their original or natural state and, according to the European Union, titanium dioxide is potentially harmful to consumers. Only a small asterisk next to "pure cotton" refers to a smaller statement that the product "*CONTAINS **100% ORGANIC** COTTON CORE." (*Id*. ¶¶ 8-21.) Palmer claims that by labeling the product in this manner, Defendant misled consumers into believing they were purchasing a product with "pure" components, meaning substances that have not been significantly altered from their initial state, are not mixed with anything else, and are clean and free of harm. Plaintiff also claims that consumers will expect all of the Product's components to be made from cotton.

2

Palmer further contends that although the statement "TAMPONS FREE OF DYES, [] & CHLORINE BLEACHING" is literally true, the product contains titanium dioxide, a synthetically prepared powder used as a white pigment that serves the identical purpose of dye and chlorine bleaching with respect to the product's components such as the string. (*Id*. ¶¶ 22-24.) Palmer claims that by labeling the product in this manner, Defendant misled consumers into believing they were purchasing a product that lacked added coloring.

Finally, Palmer contends that increased awareness of environmental harm caused by the disposal of single-use plastics drives consumers towards attempting to reduce their use of plastic. Palmer claims that the statement "90% PLANT BASED APPLICATOR" misleads consumers into thinking they are choosing an ecological alternative to oil-based plastic tampon applicators, when in fact plant-based plastic applicators behave no differently from conventional plastic after disposal. (*Id*. ¶¶ 28-37.) Palmer alleges that a survey reported by a British organization called Natracare shows that almost 80 percent of consumers thought "plant-based plastic" meant a compostable and biodegradable alternative to plastic, whereas only 11 percent knew that plant-based plastic is no different from regular plastic. (*Id*. ¶¶ 28-29.) Additionally, laboratory testing conducted by Dr. David Santillo of Greenpeace showed that tampon applicators made from plant-based plastic "will likely persist in the natural environment in the same way as 'conventional' plastic applicators." (*Id*. ¶¶ 35-36.)

Palmer alleges that Defendant sold more of this Product at higher prices (*i.e.*, a premium) than it would have in the absence of the allegedly misleading labeling. She brings claims for violation of: (1) the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*.; (2) the consumer fraud acts of the states in the putative multi-state class; (3) breach of express warranty, implied warranty of merchantability/fitness for a particular purpose, and

3

Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*; (3) negligent misrepresentation; (4) fraud; and (5) unjust enrichment. Palmer also seeks to represent a class of consumers from nine states, including Illinois, and injunctive relief against Defendant.

Jurisdiction is based on the Class Action Fairness Act of 2005. 28 U.S.C. § 1332(d)(2).

**Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

When considering a motion to dismiss, courts "accept the allegations in the complaint as true, and . . . draw all reasonable inferences in favor of the plaintiff." *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307 (7th Cir. 2021) (citation omitted). But "allegations in the form of legal conclusions are insufficient" to survive a motion to dismiss, as are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Def. Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 334 (7th Cir. 2015) (citations and internal quotation marks omitted).

4

**Discussion**

Defendant argues that the Court should dismiss Palmer's claims because she fails to plead causes of action with respect to each theory of relief and because she lacks standing to seek injunctive relief. Because Defendant's standing argument presents a threshold issue, the Court addresses it first.

**I.    Standing**

Defendant argues that Palmer fails to demonstrate standing to pursue injunctive relief. "Past exposure to illegal conduct does not in itself [provide standing to seek] injunctive relief . . . if unaccompanied by any continuing, present adverse effects," *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974), or by "a sufficient likelihood that [plaintiff] will again be wronged in a similar way," *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Indeed, most courts to address similar issues agree that consumer plaintiffs cannot pursue injunctive relief if they are already aware of the alleged deceptive practice. *See In re Herbal Supplements Mktg. & Sales Practices Litig.*, No. 15-cv-5070, 2017 WL 2215025, at *7 (N.D. Ill. May 19, 2017) ("[M]ost courts . . . have ruled that a plaintiff who is a former customer who provides no concrete basis to conclude that he or she will purchase the product at issue in the future . . . lacks standing to pursue injunctive relief on behalf of a consumer class because the plaintiff is unlikely to suffer future harm." (quoting 1 McLaughlin on Class Actions § 4.28 (13th ed. 2016))); *Mednick v. Precor, Inc.*, Case No. 14-cv-3624, 2016 WL 5390955, at *9 (N.D. Ill. Sept. 27, 2016); *Bohn v. Boiron*, Case No. 11-cv-2704, 2013 WL 3975126, at *4 (N.D. Ill. Aug. 1, 2016).

This Court follows *In re Herbal Supplements* and *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014), which reason that a plaintiff who alleges only a past harm caused by a deceptive sales practice faces no "real and immediate threat" such that she will be

deceived by the same practice after the deception is revealed, and therefore is not entitled to pursue injunctive relief. *See also Ulrich v. Probalance, Inc.*, No. 16-cv10488, 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017) (citing *Lyons*, 461 U.S. at 102). But Palmer does not allege that she continues to purchase Defendant's product. To the contrary, she confirms that she does not purchase these products anymore. (Compl. ¶ 60, ECF No. 1 ("Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its abilities, attributes, and/or composition.").) Thus, she faces no real and immediate threat anymore.

Although Palmer may wish to buy tampons that are truthfully represented as pure, free of added coloring, and plant-based, the Court agrees with Defendant that this allegation is simply too hypothetical to confer standing to pursue injunctive relief. *See Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) ("To have standing for prospective injunctive relief, a plaintiff must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical'" (citing *Lyons*, 461 U.S. at 102)). For these reasons, the Court dismisses Palmer's request for injunctive relief.

## II. Illinois Consumer Fraud and Deceptive Practices Claim

Defendant argues that Palmer fails to plausibly allege a claim under the ICFA. As a preliminary matter, the parties disagree as to whether the complaint alleges practices that are deceptive versus unfair. "A claim under the Consumer Fraud Act may be premised on either (or both), but the two categories have different pleading standards." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). "If the claim rests on allegations of deceptive conduct, then Rule 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." *Id*. (citing *Camasta*, 761 F.3d at 737). "Specifically, the complaint must

6

identify the 'who, what, when, where, and how' of the alleged fraud." *Id.* (citing *Camasta*, 761 F.3d at 737).

Palmer argues that the heightened pleading standard does not apply because she alleges Defendant's conduct was "unfair." But Palmer's complaint asserts that Defendant's labeling is both deceptive and unfair. (Compl. ¶ 64, ECF No. 1.) Palmer claims that she was induced to purchase Defendant's tampons because of the misleading statements on the box that "misrepresent[ed]" the attributes and components of the product. (*Id.* ¶ 58.) While Palmer uses the word "unfair" in her complaint, "[s]imply adding language of 'unfairness' instead of 'misrepresentation' does not alter the fact that [her] allegations are . . . grounded in fraud under the ICFA." *Camasta*, 761 F.3d at 737. Because a plaintiff can nonetheless claim that a defendant's conduct is both deceptive and unfair, *Vanzant*, 934 F.3d at 738, the Court "consider[s] both possibilities" here. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019).

### A. Deceptive Practices

Starting with the deceptive practices category, Palmer must allege (1) a deceptive act or practice by Defendant, (2) that the deceptive act or practice occurred in the course of conduct involving trade or commerce, (3) that Defendant intended that she rely on the deception, and (4) that the deception caused her actual damages. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Although the ICFA claims often involve disputed questions of fact not suitable to a motion to dismiss, a court may dismiss the complaint if the challenged statement was not misleading as a matter of law. *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001) (affirming dismissal of a complaint involving Zantac 75).

Here, the parties' dispute boils down to whether the statements on the front of the Product's box are misleading and, thus, a deceptive practice. Palmer alleges that a reasonable consumer viewing the statements would be misled into thinking that the tampons are made entirely of cotton; are pure, meaning made only of substances that have not been significantly altered from their initial state and have no possibility of harm; lack added coloring; and are environmentally friendly. These allegations describe the "who," "what," and "how" of the alleged deception with particularity. The "when" is 2020 to 2022, and the "where" is a particular Dollar General in Lombard, Illinois, as well as other Illinois stores and online.

Defendant, on the other hand, argues that the labels are not misleading as a matter of law because the statements are literally true and the labels' full context, including the ingredients panel on the packaging's backside, confirms the product's ingredients and so and no reasonable consumer could interpret them as Palmer suggests.

"[A] practice is deceptive 'if it creates a likelihood of deception or has the capacity to deceive.'" *Benson*, 944 F.3d at 646 (quoting *Bober*, 246 F.3d at 938). "To determine the likelihood of deception, courts apply a 'reasonable consumer' standard." *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 704-05 (N.D. Ill. 2020) (citing *Benson*, 944 F.3d at 646). Palmer's "claims survive if [she has] plausibly alleged that [Defendant's] front labels likely lead a significant portion of reasonable consumers to falsely believe something that the back labels belie." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020). Courts considering "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Id*. But "[t]hese questions may not be answered as a matter of law simply because lawyers can construe an ambiguous claim in a way that would not be deceptive." *Id*. at 480; *see also Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d

8

969, 973 (7th Cir. 2020) ("This determination of the likelihood of deception 'is an impressionistic one more closely akin to a finding of fact than a conclusion of law.'" (citation omitted)). Nonetheless, "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell*, 982 F.3d 468 at 477.

### i. "pure cotton*"

Defendant first argues that reasonable consumers would not interpret "pure cotton*" in its full context to mean that all components of the Product are made of cotton or from materials that have not been significantly altered from their original state. Specifically, on the front label and immediately below "pure cotton*" is the prominent statement "*CONTAINS **100% ORGANIC COTTON CORE**[.]" Defendant argues that Palmer admits the latter statement is true and argues that the context is far afield from fine print clarifying a potentially misleading statement. Defendant relies primarily upon *Cristia v. Trader Joe's Co.*, No. 22 CV 1788, 2022 WL 17551552, at *4 (N.D. Ill. Dec. 9, 2022), in which the court found that a reasonable consumer would not construe a "cold pressed juice" label on the front of a juice product to mean that the product is not subject to further processing. Defendant also points to cases that purportedly "reject claims that require the broad application of language on a label that instead clearly applies to only one ingredient or component of a product." (Def. Mem. 6 (citing *Rice v. Dreyer's Grand Ice Cream, Inc.*, 624 F. Supp. 3d 922 (N.D. Ill. 2022); *Song v. Champion Petfoods USA, Inc.*, 27 F.4th 1339 (8th Cir. 2022); *Lisowski v. Henry Thayer Co.*, 501 F. Supp. 3d 316, 335 (W.D. Pa. 2020); *Kennedy v. Mondelez Glob. LLC*, No. 19-CV-302-ENV-SJB, 2020 WL 4006197, at *12 (E.D.N.Y. July 10, 2020)).)

Those cases are distinguishable because they did not include language, such as "pure" and "100%," that could plausibly be interpreted within their context to mean the entire product is composed of that ingredient or material. It is plausible that a consumer might interpret the term "cotton core" to be the entire tampon as the "core" of the applicator, or just a smaller "core" within the tampon itself (applicator aside). It is also plausible for a consumer to interpret the phrase "CONTAINS **100% ORGANIC** COTTON CORE" to mean the "core" is entirely made of organic cotton, or that some unspecified percentage of the "core" contains cotton that is 100% organic. "[A]n otherwise false advertisement is not rendered acceptable merely because one possible interpretation of it is not untrue." *Bell*, 982 F.3d at 478 (citation omitted) (finding the phrase "'100% Grated Parmesan Cheese' might be interpreted as claiming only that whatever it contains is '100% grated,' or perhaps that whatever cheese it contains is '100% Parmesan' [. . . or] that '100%' applies to all three words: it's all cheese; all the cheese is Parmesan, and it's all grated"). Between the statements taken together and the associated imagery, Defendant clearly seeks to evoke a connection between its Product and pure cotton. Of course, Defendant is free to develop and present evidence that a reasonable consumer would not make this connection. But at this stage, it is plausible that objective consumers could be misled by Defendant's labeling.

The fact that the back label shows additional ingredients or materials does not merit a different conclusion. Courts in this circuit must consider how a "real consumer[] would understand and react to the advertising." *Bell*, 982 F.3d at 476. "Many reasonable consumers do not instinctively parse every front label or read every back label before placing groceries in their carts." *Id*. For this reason, the Seventh Circuit rejects an ambiguity rule—such as the one urged by Defendant here—immunizing defendants from suit for ambiguous front labels based on the contents of back-label ingredients. *Id*. Under such a rule, "a front label cannot be deceptive if

10

there is any way to read it that accurately aligned with the back label[;] this would be so even if the label actually deceived most consumers, and even if it had been carefully designed to deceive them." *Id*. But the 12(b)(6) standard does not attribute "to ordinary supermarket shoppers a mode of interpretation more familiar to judges trying to interpret statutes in the quiet of their chambers." *Id.* Accordingly, Palmer adequately states a claim under the ICFA relating to Defendant's "pure cotton*" label.

ii. "Tampons Free of Dyes [] & Chlorine Bleaching"

Defendant next argues that the statement "TAMPONS FREE OF DYES [] & CHLORINE BLEACHING" cannot be misleading because Palmer admits that it is literally true—titanium dioxide is neither a dye nor chlorine. Defendant argues that no reasonable consumer would understand that the tampons lacked added coloring, and any such "fanciful interpretation" would be readily dispelled by a cursory review of the back label.

Defendant again points to *Cristia*, *supra*, as well as *Floyd v. Pepperidge Farm, Inc.*, 581 F. Supp. 3d 1101, 1109 (S.D. Ill. 2022) (finding "golden butter" cracker label was not misleading as to presence of vegetable oils, because crackers were golden and contained butter), and *Gouwens v. Target Corp.*, No. 3:22-CV-50016, 2022 WL 18027524 (N.D. Ill. Dec. 30, 2022) (finding "[a] reasonable consumer would not believe that a shelf-stable, bright red fruit punch flavored liquid water enhancer was free of artificial ingredients absent an affirmative statement to the contrary" and "natural flavor" was not such an affirmative statement). These cases are distinguishable, however, because the statements at issue did not indicate that the product was "free" of or lacked any particular ingredient.

Defendant also relies upon *Stuve v. The Kraft Heinz Co.*, No. 21-CV-1845, 2023 WL 184235 (N.D. Ill. Jan. 12, 2023), in which the court found that the statement "no artificial

11

preservatives, flavors, or dyes" on a Kraft macaroni and cheese box would not mislead a reasonable consumer to believe the product was "wholesome, safe, and healthy, and [did] not contain dangerous chemicals or artificial substances, like phthalates." *Id*. at *10. The court noted that "[t]he alleged presence of a negative substance does not prohibit a manufacturer from advertising a product's positive qualities." *Id*. The court in *Stuve*, as well as Defendant, cite *George v. Starbucks Corp.*, No. 19-CV-6185 (AJN), 2020 WL 6802955, at *2 (S.D.N.Y. Nov. 19, 2020), *aff'd,* 857 F. App'x 705 (2d Cir. 2021), which found that no reasonable consumer would understand the statement "no artificial dyes or flavors" on Starbucks' baked goods "to convey any information about the company's use or non-use of pesticides in its stores."

Although *Stuve* is analogous to this case at first blush, ultimately it, and *George*, are distinguishable. Here, Defendant labels its Product as "FREE OF DYES [] & CHLORINE BLEACHING." Palmer alleges that the Product nonetheless contains titanium dioxide, a white pigment that is neither dye nor chlorine but that "serves the identical purpose of dye and chlorine bleaching" to add white color to the Product's components, such as the string. (Compl. ¶¶ 23-24.) This distinguishes this case from *Stuve*, where the plaintiffs had "not alleged that the phthalates they believe to be present in Kraft Mac & Cheese act" as an artificial preservative, flavor, or dye. *Stuve*, 2023 WL 184235, at *10. *George* is likewise distinguishable, where there was no indication of any allegation that a pesticide is the functional equivalent of an artificial dye or flavor.

It is plausible that reasonable consumers could construe Defendant's labeling, even if it is literally true, as meaning the Product lacked added coloring. *See Beardsall*, 953 F.3d at 973 ("A label is deceptive if it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false."). And as noted above, Defendant's back-label argument alone is

12

insufficient to merit dismissal at this stage of the proceedings. *Bell*, 982 F.3d at 476. Accordingly, Palmer adequately states a claim under the ICFA in this respect.

        **iii.    Plant-Based Applicator**

Finally, Defendant argues that the statement "90% PLANT BASED APPLICATOR" could not mislead reasonable consumers into believing the plastic applicator is biodegradable or compostable. Defendant argues that reasonable consumers would understand "plant based" consistent with its dictionary definition, "made or derived from plants." (Def. Mem. 10.) Defendant points out that the statement is an accurate description of the material used in the plastic applicator, which Palmer does not dispute. Palmer, on the other hand, alleges that most consumers interpret "plant-based plastic" to mean a compostable and biodegradable alternative to oil-based plastic and so the statement misleadingly conveys a positive environmental choice.

A careful reading of Palmer's allegations shows that the only basis on which she alleges that plant-based applicators are not an ecological alternative to oil-based plastic applicators (as Defendant allegedly promises) is because they "persist in the environment in just the same way" as oil-based plastic, meaning they "never biodegrade." (Compl. ¶¶ 33-34.) Put another way, the question for the Court to decide is whether the fact that plant-based plastic persists in the environment upon disposal—*i.e.*, does not biodegrade—renders the Product's applicator not "plant based" in the eyes of a reasonable consumer, making the label misleading.

The key issue then is what "plant based" means to a reasonable consumer. In support of her interpretation, Palmer alleges a consumer survey showing that nearly 80 percent of consumers thought "plant-based plastic" meant a compostable and biodegradable alternative to oil-based plastic. (Compl. ¶¶ 28-29.) Palmer's survey directly supports her theory of deception. At this stage of the proceedings, the Court must construe the survey in the light most favorable to

13

the plaintiff. Defendant's challenges to the objectivity and methodology of the survey are considerations more properly left to a later stage of the proceedings. *Bell*, 982 F.3d at 481.

Additionally, the line of non-binding cases cited by Defendant that consider the meaning of "chocolate" to a reasonable consumer do not require this Court to disregard Palmer's alleged survey. In each of those cases the court found that the plaintiff's alleged survey, even if true, did not support the theory of deception alleged in the complaint. *See Karlinski v. Costco Wholesale Corp.*, 616 F. Supp. 3d 753, 762 (N.D. Ill. 2022) ("That 'roughly sixty percent of respondents who viewed the Product's front label . . . expected it would contain more cacao bean ingredients than it did and would not be made with chocolate substitutes" is not the same thing as saying that these same respondents concluded that the Product's coating was not chocolate or that they believe chocolate must be made mostly or exclusively from cacao bean ingredients."); *Cerretti v. Whole Foods Mkt. Grp., Inc.*, No. 21 CV 5516, 2022 WL 1062793, at *4 (N.D. Ill. Apr. 8, 2022) (finding plaintiff's survey results did not support her theory of misrepresentation); *Puri v. Costco Wholesale Corp.*, No. 5:21-CV-01202-EJD, 2021 WL 6000078, at *7 (N.D. Cal. Dec. 20, 2021) (alleged survey's results did not support plaintiff's assertion that a product must be made chiefly from cacao beans to be considered "chocolate"). Such is not the case here.

For these reasons, Palmer's interpretation of the label "90% PLANT BASED APPLICATOR" is not unreasonable or fanciful and so she adequately states a deceptive practices claim under the ICFA on this basis.

### B. Unfair Practices

Next, the Court considers the second category—unfair practices. "To determine whether a practice is unfair, Illinois courts consider three factors: whether it 'offends public policy'; is 'immoral, unethical, oppressive, or unscrupulous'; or 'causes substantial injury to consumers.'"

*Vanzant*, 934 F.3d at 738-39 (quoting *Batson*, 746 F.3d at 830). "A plaintiff need not satisfy all three factors; a practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id*. (citation omitted) (cleaned up). "[B]ecause fraud is not a required element, Rule 9(b)'s heightened pleading standard does not apply." *Id*.

Palmer asserts that the same allegedly misleading labels discussed above with respect to deceptive practices, *supra*, amount to a misrepresentation of the components of the Product. This practice, she contends, causes serious injury to consumers by making them believe that the Product did not contain synthetic ingredients that were potentially harmful, lacked added coloring, and were an ecological alternative to oil-based plastics. These allegations adequately plead unfair practices. *See Benson*, 944 F.3d at 647.

### III. Other State Consumer Protection Claims

Palmer's arguments to the contrary notwithstanding, Defendant does not dispute Palmer's standing to maintain a claim for violation of other states' consumer protection statutes as a proposed class representative. Rather, Defendant argues her out-of-state consumer protection claims fail for the same reasons as her ICFA claim. Because this Court has found that Palmer adequately pleads her ICFA claim, Defendant's argument on this front likewise fails.

### IV. Plaintiff's Warranty Claims

The Court next considers Defendant's motion to dismiss Palmer's breach of express warranty, breach of implied warranty of merchantability and fitness for a particular purpose, and violation of the MMWA, which Palmer groups together. According to Palmer, Defendant expressly and impliedly warranted to Palmer and the putative class members that its Product was pure, without added coloring, and was better for the environment because it was made with plant-based plastics. She claims that Defendant directly marketed the Product to Palmer through

15

its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising. She claims that the Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging.

These claims are related under Illinois law. Under Illinois law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 ILCS 5/2-313(1)(a). Moreover, Illinois law provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314(1). Goods are merchantable when they are fit for the ordinary purposes for which such goods are used. 810 ILCS 5/2-314(2)(c).

To state a claim for breach of express warranty under Illinois law, a plaintiff must allege that a seller: "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020). Generally, "a plaintiff must state the terms of the warranty alleged to be breached or attach it to the complaint." *Gubala v. CVS Pharmacy, Inc.*, Case No. 14-cv-9039, 2015 WL 3777627, at *7 (N.D. Ill. June 16, 2015) (internal quotation marks and citation omitted).

Buyers seeking to sue for breach of express warranty must first notify the seller of its breach. *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 760 (N.D. Ill. 2015). A party's failure to comply with the notice requirement may be excused if they allege that they suffered a physical injury or that the defendant had actual knowledge of the product's defect. *Id.* at 760. But this

16

failure will not be excused if a plaintiff has suffered economic damages only. *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 590-91 (Ill. 1996).

In Defendant's view, Palmer's claim for breach of express warranty fails because she has not adequately pled the pre-suit notice required for such claims. Defendant also argues that Palmer's claim fails for a lack of privity. Palmer responds that she met the pre-suit notice requirement because she notified Defendant of the breach through filing this suit.

The Court need not reach Defendant's privity argument, because it agrees that pre-suit notice is lacking. The notice requirement is intended to "encourage pre-suit settlement negotiations." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007). That purpose would be eviscerated if a party could satisfy the notice requirement by filing suit, as Palmer contends.

The case cited by Palmer, *In re Bridgestone/Firestone, Inc. Tires Products*, 155 F. Supp. 2d 1069 (S.D. Ind. 2001), does not persuade the Court to reach a different result. In that case, the Southern District of Indiana applied the laws of Tennessee and Michigan, not Illinois law, to plaintiffs' breach of warranty claims. *Id.* at 1084. In fact, in finding that the filing of suit could satisfy the notice requirement, the court observed that it was reaching a different result than the Illinois Supreme Court, which had held that the notice requirement could not be met by filing suit, except in circumstances not present here. *Id.* at 1110 (observing that the Illinois Supreme Court held in *Connick*, 675 N.E.2d at 590, that "under Illinois law only a consumer buyer who suffered a personal injury may satisfy [the notice requirements set forth in the Uniform Commercial Code] by filing suit").

Nor does Palmer assert that she qualifies for an exception to the pre-suit notice requirement. Because Palmer acknowledges that she did not notify Defendant of the alleged

17

breach before filing this lawsuit and has not offered a valid excuse for that failure, the Court dismisses her claims for breach of express and implied warranty. And because Palmer's MMWA claim relies on the same factual allegations, the court also dismisses her MMWA claim. *See Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 781 (7th Cir. 2011) (noting that courts consider the MMWA to practically operate as a gloss on state law breach of warranty claims); *Cristia*, 2022 WL 17551552, at *5 (dismissing MMWA claim where express and implied warranty claims were dismissed for lack of pre-suit notice); *Wienhoff v. Conagra Brands, Inc.*, 626 F. Supp. 3d 1015, 1028 (S.D. Ill. 2022) ("The ability to sustain a cause of action under the Magnuson-Moss Act is dependent on the existence of an underlying viable state-law warranty claim."); *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 717 (N.D. Ill. 2020) ("Because Plaintiff's state law warranty claims fail, he also cannot make out a claim under the MMWA.").

      V.      **Negligent Misrepresentation, Unjust Enrichment, and Common-Law Fraud**

Defendant first argues that because Palmer pleads no actionable misrepresentation, her negligent misrepresentation, unjust enrichment, and common-law fraud claims fail as well. Because the Court has found Plaintiff adequately pleads misrepresentation, *supra*, this "piggybacking" argument does not merit dismissal of these other three claims.

Defendant also argues that the economic loss doctrine bars Palmer's negligent misrepresentation claim. The Illinois Supreme Court first set out the economic loss doctrine— also known as the "*Moorman* doctrine"—in *Moorman Manufacturing Co. v. National Tank Co.*, 435 N.E.2d 443, 451-52 (Ill. 1982). It "'denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations.'" *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1120 (N.D. Ill. 2019) (quoting *Sienna Ct. Condo. Assoc. v. Champion Aluminum Corp.*, 129 N.E.3d 1112, 1119 (Ill. 2018)).

Although apparently conceding that the economic loss doctrine applies, Palmer argues that her claim satisfies an exception to the rule. She contends that a plaintiff who suffers purely economic losses may maintain a claim for negligent misrepresentation against "one who is in the business of supplying information for the guidance of others in their business transactions." *See Moorman*, 435 N.E.2d at 452. According to Palmer, Defendant is the "industry leader in women's personal care products" and so "held 'itself out as having special knowledge and experience,' and 'a [non-delegable] duty,' 'outside of the contract' to provide non-deceptive information, that it breached." (Pl. Mem. 10 (quoting *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 515 (Ill. 1994)).

The Court agrees with Defendant. Other courts in this district have repeatedly rejected this same argument offered by Palmer. *See Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1164 (N.D. Ill. 2022); *Manley*, 417 F. Supp. 3d at 1121. Suppliers of tangible goods do not become "one who is in the business of supplying information for the guidance of others in their business transactions" by virtue of providing "information ancillary to the sale of a product" only. *Manley*, 417 F. Supp. at 1120 (internal quotation marks and citations omitted).

Palmer's cited case in support of her position is inapposite. *See Congregation of the Passion*, 636 N.E.2d at 514. That case concerned services offered by skilled professional accountants. *Id.* at 161. But Defendant here was not in the business of providing information in the manner intended by the exception to the economic loss doctrine. *See Manley*, 417 F. Supp. 3d at 1120-21; *Rudy*, 583 F. Supp. at 1165; *First Midwest Bank*, 843 N.E.2d at 334-35. Palmer's negligent misrepresentation claim, therefore, is dismissed.

**Conclusion**

The Court grants in part and denies in part Defendant's motion to dismiss [13].

19

Defendant's answer is due by October 2, 2023. A telephonic status hearing is set for October 11, 2023, at 9:30 am. The parties are directed to file a joint status report in accordance with the Court's standing order by October 6, 2023.

| | |
|---|---|
| **SO ORDERED.** | **ENTERED: September 11 , 2023** |
| | _____ |
| | **HON. JORGE ALONSO** <br> **United States District Judge** |

20